THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HANS MULLER and VINCENT TEOFILO, Appellants.

Court of Special Sessions of City of New York, Appellate Part, Second Department, August 22, 1940.

*Louis Waldman,* for the appellants.

*William O'Dwyer, District Attorney [J. Vincent Keogh* of counsel], for the respondent.

PER CURIAM.   Appeal by defendants-appellants from a judgment rendered February 29, 1940, in the Tenth District, Magistrates' Court, Brooklyn, charging them with a violation of subdivision 2 of section 722 of the Penal Law in that on January 5, 1940, and prior thereto, while in front of 1587 Pitkin avenue, Kings county, they " did annoy and interfere with deponent in conduct of his

business of haberdasher, by picketing in front of deponent's store, where no strike is in progress, bearing signs such as ' This store is unfair to Local # 3,' etc., defendants by such acts caused crowds to collect, obstructed the sidewalk and interfered with persons ability to enter and leave said store."

The facts were stipulated. The complainant, Ben Berkowitz, who owns a haberdashery store at 1587 Pitkin avenue, Brooklyn, N. Y., on November 26, 1935, entered into a written agreement (People's Exhibit 1) with the National Wiring and Protective Company, Inc., by the terms of which the Protective Company rented to Berkowitz as subscriber an electric burglar alarm apparatus for use at 1587 Pitkin avenue for three years from December 1, 1935, to December 1, 1938, at ninety dollars per annum, payable in equal monthly installments of seven dollars and fifty cents each. The renting agreement also provides for automatic yearly renewal, unless the subscriber gives thirty days' prior notice of his intention not to renew. The alarm apparatus and equipment remains the property of and is to be serviced by the company. The other agreement (People's Exhibit 2) relates to the installation of the apparatus, for which the subscriber paid $100, and provides that the apparatus shall at all times be and remain the property of the company. It is also stipulated that the company has made agreements with other subscribers in form similar to People's Exhibits 1 and 2. On January 3, 1940, defendant Fosgreen, who was acquitted at the trial, had a conversation with complainant Berkowitz at the latter's store, during which he informed Berkowitz that the union and employees were on strike against the National Wiring and Protective Company, Inc., and that pickets would be placed in front of the store unless union service on the system was obtained. Fosgreen also told complainant that the maintenance of the burglar alarm system was unfair to Local No. 3. Two days later, on January 5, 1940, defendants Muller and Teofilo began picketing in front of the store with signs reading: " Maintenance of Burglar Alarm in this store unfair to Local No. 3 International Brotherhood of Electrical Workers Union, A. F. of L." It is also stipulated that defendants picketed " in an orderly and peaceful way " and that there was a labor dispute over wages and hours between said Local No. 3, the employees, and the Protective Company. Defendants were members of the International Brotherhood of Electrical Workers Union and on strike. No labor was performed on the alarm system in question subsequent to January 1, 1940.

The court below held that the picketing was unlawful and for that reason it was immaterial that the conduct of the pickets was peaceful and orderly, citing *People* v. *Bellows* (281 N. Y. 67).

Appellants argue that this case is distinguishable from *People* v. *Bellows* (*supra*) in that we are not here concerned with an out and out sale and delivery of the alarm apparatus but a leasing or renting agreement whereby title remained in the lessor company which bound itself to service the alarm apparatus and replace any parts where required through wear and tear. In other words, does the leasing arrangement herein take this case out of the ruling in the *Bellows* case? This question, as it seems to us, must be answered in the affirmative.

In the *Bellows* case it was held that the store owners who purchased the sign which had been hung by members of a certain union were not parties to a labor dispute between that union and another union which picketed the store with placards setting forth that the maintenance of such sign was unfair to it. Chief Judge CRANE held that " This constituted a secondary boycott and was illegal," and further that " There was here no such unity of interest with the manufacturer as was developed in the *Goldfinger* case," citing *Goldfinger* v. *Feintuch* (276 N. Y. 281). It is clear that there is a distinction on the facts between the *Bellows* case and the instant case. In the former the sign had been sold outright and was installed prior to the picketing while here we are dealing with a burglar alarm system which was installed not as an outright sale but under a leasing agreement with title continuing in the lessor (the firm against which the strike was called), and providing for continuing maintenance and servicing by the lessor. True, the complaining witness Berkowitz herein was not in the same line of business as the National Wiring and Protective Company, Inc., but can it be said that there was not a unity of interest between the two in so far as the leasing agreement is concerned? If the complainant chose to obtain the advantage of a leasing agreement providing for continuous service of the character herein disclosed, is he to be free from whatever burden may flow in case of a labor dispute between his lessor and the latter's employees who are engaged in the maintenance and servicing of the leased property? In short, is this a case of secondary boycott? If not, the complainant must sustain any incidental inconvenience and damages arising out of a *bona fide* labor dispute in which the picketing is orderly and peaceful.

In the *Goldfinger* case (*Goldfinger* v. *Feintuch*, 276 N. Y. 281), Judge RIPPEY, concurring in part, said: " Except for the finding of unity of interest, the facts would establish a secondary boycott and would be illegal. I cannot agree that the plaintiff and the manufacturer were engaged in the same trade or industry." It is true that the majority opinion took the view that the retailer was in

the same line of business as well as in unity of interest with the manufacturer, but there was no holding that a unity of interest alone would not have constituted a legal basis for peaceful picketing.

A number of cases are cited by both parties to this appeal, the majority of which are concerned with injunctive relief, some arising before and others after the enactment of section 876-a of the Civil Practice Act. An examination of these cases makes it clear that our courts do not hesitate to protect the well-established right of labor to strike where there is a *bona fide* labor dispute and it appears that the picketing, if employed, is orderly and peaceful and not directed against one not legally involved in or concerned with the controversy.

Respondent draws attention to paragraph 9 of the stipulation of facts to the effect that no labor was performed on the burglar alarm system subsequent to January 1, 1940. This, as it seems to us, is of no consequence for the reason that the leasing agreement was for continuous servicing which did not call for labor at any particular or specified time.

It is our opinion that the *Bellows* case (*supra*) does not apply and hence the judgments should be reversed and the complaints dismissed.

Present — Bayes, P. J., Brady and Wieboldt, JJ.